**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RACHEL V. B.,                          )    NO. CV 20-2053-E
                                       )
              Plaintiff,               )
                                       )
       v.                              )    **MEMORANDUM OPINION**
                                       )
ANDREW SAUL, Commissioner of           )    **AND ORDER OF REMAND**
Social Security,                       )
                                       )
              Defendant.               )
_____)

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS
HEREBY ORDERED that this matter is remanded for further administrative
action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on March 2, 2020, seeking review of
the Commissioner's denial of benefits.  The parties consented to
proceed before a United States Magistrate Judge on April 15, 2020.
Following the retirement of Magistrate Judge Walsh, the case was
transferred to Magistrate Judge Eick on August 21, 2020.  The parties

1  filed a Joint Stipulation on November 10, 2020.  The Court has taken

2  the matter under submission without oral argument.  See L.R. 7-15.

3

4                            **BACKGROUND**

5

6      Plaintiff asserts disability since January 7, 2015, based on

7  alleged physical impairments (Administrative Record ("A.R.") 247-48,

8  261, 300).  An Administrative Law Judge ("ALJ") reviewed the record

9  and heard testimony from Plaintiff and a vocational expert (A.R. 15-

10  25, 81-115).  Plaintiff testified that, because of pain, she could

11  lift only five pounds or less and could sit for only five or ten

12  minutes before having to change positions (A.R. 95, 97).

13

14      The ALJ found that Plaintiff has severe: (1) right shoulder

15  impingement, rotator cuff tear and degenerative joint disease, status-

16  post arthroscopy; (2) history of adhesive capsulitis; (3) diabetes

17  mellitus type 2 with hyperglycemia in stable condition; (4)  occipital

18  neuralgia; (5) cervical spine degenerative disc disease, status-post

19  discectomy in December 2015; (6) carpal tunnel syndrome; and

20  (7) obesity (A.R. 18).  However, the ALJ also found that Plaintiff

21  retains the residual functional capacity for light work (which

22  involves lifting/carrying 20 pounds occasionally and 10 pounds

23  frequently), limited to no more than frequent stooping, kneeling,

24  crouching and balancing, occasional crawling, no climbing of ladders,

25  ropes or scaffolds, occasional reaching overhead with her right upper

26  extremity, and occasional handling, feeling and fingering (A.R. 19-23

27  (rejecting Plaintiff's allegations of greater limitations)).  The ALJ

28  deemed Plaintiff capable of performing work as an usher and counter

clerk and, on that basis, denied disability benefits (A.R. 24-25 (adopting vocational expert testimony at A.R. 110-11)).[1]   The Appeals Council denied review (A.R. 1-3).

### STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards.  See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may
> not substitute its judgment for that of the ALJ.  But the
> Commissioner's decision cannot be affirmed simply by
> isolating a specific quantum of supporting evidence.
> Rather, a court must consider the record as a whole,
> weighing both evidence that supports and evidence that

---

[1]   The vocational expert testified that, if a person were further limited to lifting and carrying 10 pounds occasionally and five pounds frequently, there would be no work that person could perform (A.R. 112).

1    detracts from the [administrative] conclusion.

2

3    Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and

4    quotations omitted).

5

6                              **DISCUSSION**

7

8        After consideration of the record as a whole, the Court reverses

9    the Administration's decision in part and remands the matter for

10   further administrative proceedings.  As discussed below, the

11   Administration materially erred in evaluating the evidence of record.

12

13   **I.    Summary of the Medical Record and Plaintiff's Subjective**

14          **Complaints.**

15

16       Treatment records reflect consistent complaints of pain despite

17   escalating treatment.  Plaintiff's treatment began with chiropractic

18   care, physical therapy and acupuncture coupled with anti-inflammatory

19   medications.  Eventually, her treatment progressed to narcotic pain

20   medications, steroid injections, and surgeries.

21

22       Plaintiff had a right shoulder injection in September of 2014,

23   after chiropractic treatment had failed to improve her pain (A.R. 466-

24   67, 479-80, 487-88, 491-97).  A MRI showed two right shoulder tears

25   with mild acromioclavicular joint degenerative changes (A.R. 468-69).

26   By mid-October, Plaintiff reported having a painful frozen shoulder

27   that had improved by only a few degrees over the previous month and a

28   half with chiropractic treatment (A.R. 503).  The next week she

                                    3

1 | reported that her pain had decreased but she was not "a hundred
2 | percent" (A.R. 505).  On October 27, 2014, Plaintiff reported that
3 | physical therapy and chiropractic treatment had improved her neck pain
4 | but she still had shoulder pain (A.R. 506).  Over the next two months
5 | of chiropractic treatment, Plaintiff reported continued pain and
6 | reduced range of motion in her shoulder and neck, moving into her mid
7 | back (A.R. 507-22).

9 | On January 7, 2015 (the alleged onset date), Plaintiff presented
10 | to Memorial Care Medical Group, reporting that she had been rear ended
11 | that morning on the freeway, which had caused her neck to snap with
12 | ensuing tightness, right side tingling and bilateral side pain (A.R.
13 | 399, 537-42).  After the accident, Plaintiff had gone to her
14 | chiropractor for electric stimulation (A.R. 400, see also A.R. 524,
15 | 544-51 (chiropractic treatment note and "Doctors [sic] Excuse" form
16 | stating that Plaintiff was restricted from work until January 9,
17 | 2015)).  On examination at the Memorial Care Medical Group, Plaintiff
18 | reportedly had right shoulder impingement syndrome, cervical
19 | radiculopathy and diabetes mellitus since at least October of 2014
20 | (A.R. 400).  Plaintiff was diagnosed with back pain/strain, prescribed
21 | 800 mg ibuprofen and referred for physical therapy (A.R. 401-04).[2]

23 | In April of 2015, Plaintiff was diagnosed with cervical and
24 | lumbar radiculopathy, right shoulder impingement and adhesive

26
27 | [2]    Plaintiff also followed up for regular chiropractic
treatment through at least July of 2015, reporting fluctuating
28 | pain and decline in certain activities (e.g., driving, computer
work, cooking and gardening) (A.R. 552-648).

capsulitis based on cervical and lumbar spine MRI studies (A.R. 658; see A.R. 649-51 (April, 2015 cervical spine MRI showing C6-C7 central to right foraminal disc extrusion without canal stenosis, with uncovertebral spurring contributing to mild to moderate right and mild left neural foraminal stenosis, and mild disc disease at C5-C6 without stenosis), A.R. 652-53 (April, 2015 lumbar spine MRI showing mild disc disease at L5-S1 with slight effacement of the L5 nerve root).

In June of 2015, Plaintiff reportedly presented with, inter alia, acute cervical and thoracic sprain, rotator cuff tear with arthropathy of the right shoulder, labral tear of the right shoulder and uncontrolled type 2 diabetes (A.R. 426). She was prescribed Soma, 800 mg ibuprofen, and referred for a diabetes management appointment (A.R. 429-30).

In October of 2015, orthopedic surgeon Dr. Sam Bakshian evaluated Plaintiff's severe cervical spine pain radiating into her right shoulder and arm, as confirmed by a cervical EMG/nerve conduction study (A.R. 857-58). Dr. Bakshian recommended surgery (id.). Plaintiff underwent a cervical spine discectomy and fusion at C6-C7 with hardware placement on December 1, 2015 (A.R. 678-704). As Plaintiff recovered from her surgery, she noted an increase in her right shoulder pain (A.R. 708).

Orthopedic surgeon Dr. Howard J. Marans evaluated Plaintiff's right shoulder on March 2, 2016, and prepared a Comprehensive Orthopedic Consultation report (A.R. 707-10). Plaintiff complained of constant, moderate to severe pain in her right shoulder radiating down

to the elbow and right thumb with numbness and tingling, increased by
reaching, pushing, pulling, driving and most movements, with popping,
grinding and cracking in her right shoulder, not relieved by heat, ice
or medication (A.R. 707).  On examination, she had a range of motion
at 60 percent of the normal range with pain, positive impingement
signs and marked tenderness (A.R. 709).  An MRI revealed bursal-sided
rotator cuff tearing, which was worse than before Plaintiff's car
accident (A.R. 709).  Dr. Marans recommended right shoulder
arthroscopy and subacromial decompression with rotator cuff repair and
debridement, given that Plaintiff had not had long-term benefit from
anti-inflammatory medications, physical therapy or multiple
corticosteroid injections (A.R. 709).  Plaintiff underwent the
recommended surgery (see A.R. 719-21 (surgery notes)) and followed up
on April 6, 2016, one week after her surgery, when she was approved to
start physical therapy (A.R. 711-12).  On April 20, 2016, Plaintiff
reported that she was doing well and her preoperative pain was gone
(A.R. 713-14).  On May 13, 2016, however, Plaintiff reported that her
preoperative pain was improved, but she was having very significant
postoperative discomfort (A.R. 717).

    A state agency physician reviewed the record in July of 2016, and
deemed Plaintiff capable of light work limited to no more than
frequent postural activities, except for occasional crawling, no
climbing ladders/ropes/scaffolds, and occasional right side overhead
reaching (A.R. 116-26).  On reconsideration in October of 2016,
another state agency physician opined that Plaintiff would also be
limited to no more than frequent fingering/handling with the right
upper extremity (A.R. 140-50).

1    Meanwhile, Dr. Bakshian evaluated Plaintiff on October 5, 2016,

2  for bilateral hand numbness and tingling, as well as neck, arm and

3  right hip pain (A.R. 852-53).  A July, 2016 electrodiagnostic study of

4  Plaintiff's upper extremities was abnormal, showing evidence of

5  moderate bilateral carpal tunnel syndrome (A.R. 845-47).  Dr. Bakshian

6  diagnosed status post anterior cervical discectomy and fusion at C5-C6

7  with right upper extremity radiation (improved), status post right

8  shoulder arthroscopy, lumbosacral sprain/strain with presumed

9  discopathy at L5-S1, acute onset of neck and upper back pain with

10  radiation, numbness, tingling and weakness in both upper extremities,

11  right-sided sacroiliitis versus lumbosacral sprain/strain, and

12  bilateral carpal tunnel syndrome for which Dr. Bakshian recommended

13  bilateral carpal tunnel releases (A.R. 853).[3]

14

15    Plaintiff also received monthly pain management from July of 2015

16  through at least June of 2017 for reported neck pain with numbness

17  radiating to the right upper extremity, low back pain radiating to the

18  right lower extremity, right shoulder and hand pain, bilateral arm

19  pain, and related insomnia (A.R. 760-838, 866-909).  Plaintiff was

20  prescribed Flexeril, Norco, Gabapentin, at least one Toradol injection

21  and a cervical spine epidural steroid injection (id.).  Plaintiff also

22  underwent a cervical steroid injection on August 11, 2015, with

23  minimal improvement, she had some benefit from acupuncture and

24  physical therapy, but she had continuing postoperative pain with

25

26  _____

27    [3]    The state agency physicians who reviewed the record did
  not have the benefit of Dr. Bakshian's October, 2016 evaluation
  or the July, 2016 abnormal electrodiagnostic studies showing
28  carpal tunnel syndrome.  See A.R. 142-45.

numbness in the arms (A.R. 761).  Plaintiff reported limited

activities of daily living throughout this period of time.  See, e.g.,

A.R. 761, 833, 867, 895.


At the administrative hearing on November 8, 2018, Plaintiff

similarly testified to only limited daily activities.  She testified

that she lived in an apartment with her boyfriend, three dogs, one

turtle and two fish, and that she helped care for the pets (A.R. 85).

She did not have a car or a current driver's license, but she could

take public transportation (A.R. 87-89).  She said she could go

shopping, but her boyfriend handled most of the shopping (A.R. 89).


Plaintiff said she spent her days fielding phone calls and

updating calendars for her mother's vacation rental business, which

she said took only five minutes per booking and involved no more than

four bookings a day (A.R. 98-99, 101).  Plaintiff said that, if she is

able to sleep, she sleeps, and it takes her a while to get moving in

the morning (A.R. 104).  Plaintiff said she eats breakfast, checks on

her mother, goes to doctor appointments, checks email on her phone,

has dinner (if she makes a meal she just opens prepared foods), and

she watches her dogs have their dinner before going to bed (A.R. 105-

07). Plaintiff said she often falls asleep during the day because she

is tired due to lack of sleep at night from the pain (A.R. 103).

Plaintiff said she does not lie down during the day and sleeps sitting

///

///

///

///

up to manage her neck pain (A.R. 98).[4]

Plaintiff testified that she previously had worked as an interior designer, traveling notary, loan foreclosure processor and accounts receivable clerk (A.R. 90-93). Plaintiff said she stopped working because her work required her to carry things and her hands and back prevent her from picking up things like a hammer, and because her neck hurts if she looks up for too long (A.R. 93-95). As noted above, Plaintiff explained that she could lift no more than five pounds and could sit for five or ten minutes before having to change positions due to pain (A.R. 95, 97). Plaintiff said she was supposed to have bilateral carpal tunnel surgery, but that particular surgery had not yet happened (A.R. 94). She said she still had pain in her neck post spinal surgery, which makes holding her neck up (or down) uncomfortable (A.R. 97-98).

Plaintiff said she no longer uses a computer because typing hurts her hands, so she uses her phone with a stylus (A.R. 100). Plaintiff said she could no longer work as a notary due to her hand and neck problems (A.R. 100). Plaintiff said she "would try" to do a job where she would not have to use her hands frequently and could sit and stand whenever she wanted (A.R. 100). Plaintiff also said she "would try" a

---

[4]    In an undated Disability Report - Appeal form, Plaintiff reported that severe hand pain impairs her daily activities (e.g., she could not hold and use a hairbrush, she cannot open envelopes, it takes her a long time to complete simple tasks), severe hip pain limits her ability to stand, sit, walk or lie down for extended periods of time, sleeplessness interferes with her ability to think or focus, and she is unable to keep on top of household chores like laundry, cooking or managing household finances (A.R. 345).

job doing work like the work she does for her mother, notwithstanding difficulty concentrating and staying awake and notwithstanding pain from sitting and from lifting a phone to her ear (A.R. 102-03).

At the time of the hearing, Plaintiff said she was not taking any diabetes medications because she could not afford them (her out of pocket medication costs were $600 per month), and she was not seeking out other treatment because her deductible was too high for the health insurance she had through her father, and she only very recently had found out she still had Medi-Cal (A.R. 96).  Plaintiff had received an accident settlement in June of 2018, but she said all that money had gone for medical bills and back rent (A.R. 86).

**II.  The ALJ Erred in Discounting Plaintiff's Testimony and Statements Regarding the Severity of Plaintiff's Symptoms Without Stating Legally Sufficient Reasons for Doing So.**

Where, as here, an ALJ finds that a claimant's medically determinable impairments reasonably could be expected to cause some degree of the alleged symptoms of which the claimant subjectively complains, any discounting of the claimant's complaints must be supported by "specific, cogent" findings.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must state "specific, clear and convincing" reasons to reject a claimant's testimony where there is no

///

///

evidence of malingering).[5]  Generalized, conclusory findings do not

suffice.  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)

(the ALJ's credibility findings "must be sufficiently specific to

allow a reviewing court to conclude the ALJ rejected the claimant's

testimony on permissible grounds and did not arbitrarily discredit the

claimant's testimony") (internal citations and quotations omitted);

Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ

must "specifically identify the testimony [the ALJ] finds not to be

credible and must explain what evidence undermines the testimony");

Smolen v. Chater, 80 F.3d at 1284 ("The ALJ must state specifically

which symptom testimony is not credible and what facts in the record

lead to that conclusion."); see also Social Security Ruling ("SSR")

96-7p (explaining how to assess a claimant's credibility), superseded,

///

///

///

///

///

///

---

[5]     In the absence of an ALJ's reliance on evidence of
"malingering," most recent Ninth Circuit cases have applied the
"clear and convincing" standard.  See, e.g., Leon v. Berryhill,
880 F.3d 1041, 1046 (9th Cir. 2017); Brown-Hunter v. Colvin, 806
F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d
1133, 1136-37 (9th Cir. 2014); Treichler v. Commissioner, 775
F.3d 1090, 1102 (9th Cir. 2014); Ghanim v. Colvin, 763 F.3d 1154,
1163 n.9 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995,
1014-15 & n.18 (9th Cir. 2014); see also Ballard v. Apfel, 2000
WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting
earlier cases).  In the present case, the ALJ's findings are
insufficient under either standard, so the distinction between
the two standards (if any) is academic.

1   SSR 16-3p (eff. March 28, 2016).[6]

2

3        In the present case, the ALJ discounted Plaintiff's testimony

4   regarding the severity of her symptoms (A.R. 19-22).  As reasons, the

5   ALJ stated: (1) Plaintiff's activities of daily living assertedly

6   included maintaining her personal care, eating independently, going to

7   her appointments, "cooking" simple meals such as pre-cut salads,

8   checking her email on her cell phone, "putting dishes into the

9   washer,"[7] and caring for her pets; (2) the medical records supposedly

10  show that Plaintiff received "conservative treat[ment] with

11  medications" and epidural steroid injections, and that she "only

12  needed conservative treatment even after her surgery"; and

13  (3) Plaintiff had not been compliant with her diabetic medications and

14  had "self-stopped her treatment," assertedly suggesting her symptoms

15  were not as severe as reported (although the ALJ did not "base the

16  ultimate decision . . . on this factor alone") (A.R. 19-22).

17

18       With regard to reason (1), inconsistencies between admitted daily

19  activities and claimed incapacity properly may impugn the accuracy of

20

21  _____

22       [6]    Social Security Rulings ("SSRs") are binding on the
    Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1

23  (9th Cir. 1990).  The appropriate analysis under the superseding
    SSR is substantially the same as the analysis under the

24  superseded SSR.  See R.P. v. Colvin, 2016 WL 7042259, at *9 n.7
    (E.D. Cal. Dec. 5, 2016) (stating that SSR 16-3p "implemented a

25  change in diction rather than substance") (citations omitted);
    see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir.

26  2017) (suggesting that SSR 16-3p "makes clear what our precedent
    already required").

27
         [7]    Actually, Plaintiff testified she did not put dishes

28  into the dishwasher (A.R. 107).

                                    12

a claimant's testimony and statements under certain circumstances. See, e.g., Thune v. Astrue, 499 Fed. App'x 701, 703 (9th Cir. 2012) (ALJ properly discredited pain allegations as contradicting claimant's testimony that she gardened, cleaned, cooked, and ran errands); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" provided sufficient explanation for discounting claimant's testimony). Yet, it is difficult to reconcile Ninth Circuit opinions discussing when a claimant's admitted activities may and may not justify a discounting of the claimant's testimony and statements. Compare Stubbs-Danielson v. Astrue with Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); see also Diedrich v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017) (daily activities of cooking, cleaning, vacuuming, washing dishes, shopping and cleaning a cat's litter box insufficient to discount the claimant's subjective complaints).

In the present case, Plaintiff's limited daily activities do not necessarily contradict her subjective complaints. Although Plaintiff reported helping her mother with her mother's rental business, the help Plaintiff provided was very minimal. None of Plaintiff's reported activities on which the ALJ expressly relied contradict her claim that she could lift no more than five pounds. Plaintiff's daily activities do not undermine her subjective complaints. See Revels v.

Berryhill, 874 F.3d 648, 667-68 (9th Cir. 2017).

With regard to reason (2), a limited course of treatment sometimes can justify the rejection of a claimant's testimony, at least where the testimony concerns physical problems.  See, e.g., Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of consistent treatment, such as where there was a three to four month gap in treatment, properly considered in discrediting claimant's back pain testimony); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (in assessing the credibility of a claimant's pain testimony, the Administration properly may consider the claimant's failure to request treatment and failure to follow treatment advice) (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible credibility factors in assessing pain testimony include limited treatment and minimal use of medications); see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (absence of treatment for back pain during half of the alleged disability period, and evidence of only "conservative treatment" when the claimant finally sought treatment, sufficient to discount claimant's testimony).

In the present case, however, it is doubtful Plaintiff's treatment with narcotic pain medications, epidural steroid injections, and two surgeries with a third surgery recommended may properly be characterized as "conservative" within the meaning of Ninth Circuit jurisprudence.  See, e.g., Shepard v. Colvin, 2015 WL 9490094, at *7 (E.D. Cal. Dec. 30, 2015) ("[p]rior cases in the Ninth Circuit have found that treatment was conservative when the claimant's pain was

adequately treated with over-the-counter medication and other minimal treatment," however where record reflected heavy reliance on Tramadol and Oxycodone and other prescriptions for pain, record did not support finding that treatment was "conservative") (internal citations omitted; citing for comparison Lapeirre-Gutt v. Astrue, 382 Fed. App'x. 662, 664 (9th Cir. 2010) (doubting whether "copious amounts of narcotic pain medication" as well as nerve blocks and trigger point injections was "conservative" treatment)); Childress v. Colvin, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of [Norco] (for several years) is 'conservative' or in conflict with Plaintiff's pain testimony"); Aquilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications"); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize as "conservative" treatment that included narcotic pain medication and epidural injections). Indeed, Defendant admits that Plaintiff's "conservative treatment" for her neck ultimately failed and she had to have surgery.  See Joint Statement, p. 17.  As detailed above, Plaintiff regularly sought treatment throughout much of the alleged disability period, taking prescription narcotic pain medications and undergoing physical therapy, chiropractic treatment, acupuncture, pain injections and neck and shoulder surgeries.

    With regard to reason (3), noncompliance with prescribed or recommended treatment sometimes can properly suggest that a claimant's symptoms have not been as severe as the claimant has asserted.  See

_Fair v. Bowen_, 885 F.2d 597, 603 (9th Cir. 1989) (unexplained or inadequately explained failure to follow prescribed course of treatment can cast doubt on claimant's credibility ); _see also_ _Molina v. Astrue_, 674 F.3d 1104, 1113 (9th Cir. 2012) ("We have long held that, in assessing a claimant's credibility the ALJ may properly rely on unexplained or inadequately explained failure. . . to follow a prescribed course of treatment") (citations and quotations omitted); SSR 16-3p ("if the individual fails to follow prescribed treatment that might improve symptoms, we may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"); _Rouse v. Berryhill_, 2017 WL 4404402, at *16 (D.S.C. July 6, 2017), _rejected on other grounds_, 2017 WL 4348560 (D.S.C. Sept. 29, 2017) (court upheld ALJ's discounting of the plaintiff's testimony concerning back pain, stating, _inter alia_, "while pain medication was prescribed, the plaintiff declined refills, indicating her pain may not have been as severe as alleged").

In the present case, however, Plaintiff explained that she had not been compliant with her diabetic medications and had stopped treatment because she could not afford to pay for either (A.R. 96). Plaintiff also said she had been under the mistaken impression that her accident settlement had rendered her ineligible for Medi-Cal (A.R. 96). In the ALJ's decision, the ALJ did not acknowledge Plaintiff's stated reasons for recently having stopped her treatment (A.R. 19-22).

It is sometimes improper for an ALJ to fault a claimant for noncompliance with recommended treatment if the claimant cannot pay for treatment. _See_ _Regennitter v. Commissioner_, 166 F.3d 1294, 1297

1  (9th Cir. 1999) ("we have proscribed the rejection of a claimant's
2  complaints for lack of treatment when the record establishes that the
3  claimant could not afford it") (citations and footnote omitted).  On
4  the present record, in light of Plaintiff's explanations for her
5  noncompliance with treatment, such noncompliance may not properly
6  undermine Plaintiff's credibility.  If the ALJ had wished to discount
7  Plaintiff's credibility on this basis, the ALJ should have addressed
8  Plaintiff's explanations.  See Marquez v. Astrue, 2010 WL 1709204, at
9  *2 (C.D. Cal. Apr. 27, 2010) (ALJ erred by relying on lack of
10  treatment without expressly addressing claimant's explanations);
11  Ostalaza v. Astrue, 2009 WL 3170089, at *7 (C.D. Cal. Sept. 30, 2009)
12  (same).

13

14      Defendant cites to a patient instruction page from a diabetes
15  management visit in July of 2016 – when Plaintiff was prescribed
16  glucose, Metformin, Glipizide and referred to endocrinology with a
17  note that she also needed insulin – stating, "Walmart medications for
18  diabetes cash price: $4, 30-day Supply."  See Joint Stipulation, p. 18
19  (citing A.R. 441, 445).  Defendant suggests that such evidence
20  demonstrates that doctors had provided Plaintiff with inexpensive ways
21  of treating her diabetes, but Plaintiff chose not to pursue them
22  (id.).  Contrary to Defendant's suggestion, the patient instruction
23  does not conclusively establish that Plaintiff rejected a less
24  expensive way to treat her diabetes.  The instruction does not specify
25  what the "medications" are that may be filled for $4 per month, or
26  indicate whether that price encompassed all of Plaintiff's necessary
27  diabetic medications (A.R. 441, 445).  In any event, the ALJ did not
28  cite this evidence as part of the ALJ's stated reasoning.  The Court

cannot affirm the ALJ's decision on a ground that the ALJ did not state in the decision.  See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"); Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("We are wary of speculating about the basis of the ALJ's conclusion. . . ."); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (Ninth Circuit reversed the district court's decision where the district court had affirmed on the basis of reasons supported by the record but unstated by the ALJ).

The Court is unable to conclude that the ALJ's failure to state legally sufficient reasons for discounting Plaintiff's subjective complaints was harmless.  "[A]n ALJ's error is harmless where it is inconsequential to the ultimate non-disability determination."  Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and quotations omitted).  Here, the vocational expert testified that, if a person were further limited to lifting and carrying 10 pounds occasionally and five pounds frequently, there would be no work that person could perform (A.R. 112).

III. **Remand for Further Administrative Proceedings is Appropriate.**

Remand is appropriate because the circumstances of this case suggest that further development of the record and further administrative review could remedy the ALJ's errors.  See McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative

determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Leon v. Berryhill, 880 F.3d 1041, 1044 (9th Cir. 2017) (reversal with a directive for the immediate calculation of benefits is a "rare and prophylactic exception to the well-established ordinary remand rule"); Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Treichler v. Commissioner, 775 F.3d 1090, 1101 n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record"); Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) ("Connett") (remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony); but see Orn v. Astrue, 495 F.3d 625, 640 (9th Cir. 2007) (citing Connett for the proposition that "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony, we remand for a calculation of benefits") (quotations omitted); see also Brown-Hunter v. Colvin, 806 F.3d 487, 495-96 (9th Cir. 2015) (discussing the narrow circumstances in which a court will order a benefits calculation rather than further proceedings); Ghanim v. Colvin, 763 F.3d 1154, 1166 (9th Cir. 2014) (remanding for further proceedings where the ALJ failed to state sufficient reasons for

deeming a claimant's testimony not credible); <u>Vasquez v. Astrue</u>, 572 F.3d 586, 600-01 (9th Cir. 2009) (a court need not "credit as true" improperly rejected claimant testimony where there are outstanding issues that must be resolved before a proper disability determination can be made).  There remain significant unanswered questions in the present record.

**CONCLUSION**

For all of the foregoing reasons,[8] the decision of the Commissioner of the Social Security Administration is reversed in part and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 4, 2020.

_____
                /S/
          CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[8]    The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.